Good morning, and may it please the Court, my name is Christina Hellman, and I represent the defendant-appellant Zeljko Boskovic. I would like to reserve two minutes of my time today for rebuttal. The clock counts down. A defendant has the right to have the jury determine his guilt or innocence solely on the evidence presented at trial, not on evidence outside the record, not because the jury just trusts the government's judgment of the evidence, and not because of passion, fear, or prejudice. And vouching and improper arguments jeopardize that right, because that's what happened in Mr. Boskovic's case. This case should be remanded for a new trial. This morning I plan to focus first on the prosecutorial vouching and improper arguments that happened in rebuttal, and then move on to discuss the form of institutional vouching that occurred when the Court permitted Mr. Boskovic's interpreted and translated statements into evidence without requiring the government to produce the interpreter. On the issue of vouching and improper arguments, I have three points to make. The first is that none of the vouching was invited by defense counsel's arguments. Defense counsel made arguments that were proper, that were based on evidence in the record, and there was nothing in those arguments that made it necessary for the government to vouch for the credibility of the agent, to tell the jury that the agent would rather chew off his arm than lie to them. And there was nothing in the argument that called for the government to make an analogy between Mr. Boskovic and the son of Sam. Okay. Let me read to you just in context that chew-off-the-arm comment. The prosecutor says to the jury, I would submit it deserves substantially more weight than defense counsel would credit it. I put it to you that Ted Wyman would rather chew off his arm than lie. I leave it to you to decide. So that's the context in which that chew-off-his-arm context is. We've got language that says, if the prosecutor says, I submit to you, and then says something favorable to one of his witnesses, that that's not improper vouching. How is this, when I read those three sentences together, different from what we've held to have been permissible? Normally, when the prosecutor uses the phrase, I submit, what follows is an inference from the record. So the phrase, I submit, is cueing the jury to know that what's going to come next is something that's based on something that they've heard from the evidence. I submit does not in and of itself insulate an improper statement that would follow. Well, maybe I'll go back a little bit before I get to the submit. Maybe I'm wrong about that. The point is he went through the written statement word for word with them. None of these are $25 words, you know. They're all relatively simple basic English words in the defendant's statements. So you decide how much weight to give it. I would submit it deserves substantially more weight than defense counsel would. I put it to you that Ted Wyman would rather chew off his arm than lie. I leave it to you to decide. So he is referencing evidence in the record. He is referencing evidence in the record, and those other statements are themselves proper. But when he says that I would – that Ted Wyman would rather chew off his arm than lie, what he's doing is either referring to evidence outside the record, his own knowledge of Agent Wyman and his own – or his own guarantee of Agent Wyman's veracity. And so in that sense, the statement is not proper. Well, if you look at our case, I think it's Harrison, a Hawaii case involving vouching. Yes, Your Honor. I think that – I dissented in that case. I believe I counted 28 instances in which the assistant U.S. attorney in cross-examining the defendant said, and so you're saying then that Agent so-and-so is lying. He's a liar. He's a liar. He's a liar. And then argued, he's not lying. I'm telling you he's not lying. And our court affirmed that conviction. Again, it was over my protest. But 28 instances, how do you – how do you get there in light of Harrison on this instance? Because in the court – this Court has been clear that when you're saying that it's proper for the – for someone – for a prosecutor, excuse me, Your Honor, it's proper for a prosecutor to argue an inference from the record, which is that one of these people has to be lying if the two stories do not line up. But in this case, what he's – he's not saying Ted Wyman's not a liar based on the evidence. He's saying, I promise you, jury, that Ted Wyman wouldn't lie to you. He didn't use those words, I promise you. He didn't use words that we've seen in other vouching cases where you can say, you can rely on the government, your government wouldn't lie to you, or I'm a good guy, I'm a lawyer, I've been with you for the last couple of days, you can trust me, I wouldn't put on a witness who would deceive you. Those – those kinds of egregious cases of vouching, and this just isn't – this isn't that case. No, he doesn't – you're right, he doesn't say, I promise – I promise you he won't lie to you. But what he does is give a extremely vivid and grotesque statement about what this agent would rather do than lie, which is chew off his own arm. Yeah. Could you turn to the one that is a little more graphic, and that's the son of Sam? Yes, Your Honor. Invocation? The son of Sam – did you have a specific question about that, or would you like me to just explain? Well, the counsel says he introduces son of Sam, but then immediately then says, I'm not analogizing here at all, I just happen to think of the most brutal murder or series of murders that simply just happen to come to mind. Does his fact of saying, well, I'm not drawing an analogy, and then the district court gives a curative instruction on it, take care of the problem? There was no objection by defense counsel at the time. That's correct, Your Honor, and then I have three points to make in response. One, saying that I'm not drawing an analogy, but – and then going on to talk about the son of Sam, as I pointed out in the briefs – is a flag. What it shows is that the speaker knows what's going to follow is improper, but he's going to go ahead and say it anyway. It's sort of like saying, I don't mean to be rude, but, wow, you look like you've put on a lot of weight since I saw you last time. It doesn't insulate what comes next from being proper. And the second thing is that, yes, there was no objection from defense counsel, and we don't know why that didn't happen. But this Court has not put the burden solely on defense counsel to monitor instances of improper vouching. The burden is on the prosecutor to refrain from doing so under their higher burden. And – But this isn't just vouching. This is appeal to passion and prejudice. That's correct, Your Honor. This is an example of an improper argument appealing to passion and prejudice. And we don't put the burden on defense counsel solely to be the policeman. Like I said, the burden rests with the prosecutor and, to some extent, the court. And that's why, under a plain error review, this Court has reversed instances. Well, how much did the jury know about Mr. Boscovich's involvement in the Srebrenica? Separate and apart from anything, why would this – why is it your theory that this doesn't resonate with the jury in a prejudicial manner? Because war crimes such as Srebrenica and the Son of Sam evoke the same emotions in a person. Fear – My question was, how much did the jury know – I'm sorry, I may have confused you. How much did the jury know otherwise from the evidence about Mr. Boscovich's connection with Srebrenica? They knew – The atrocities that happened there. They knew a lot, and they knew more than they were supposed to, because the government exceeded the district court's scope. So they knew that Mr. Boscovich was a member of the Zvornik Brigade. Well, now, wait a minute. You've editorialized about they knew more than they were supposed to. I want to focus on the issues that are before us on appeal. I don't recall your – including in your charge that they did what you just said about getting the evidence in. So we accept the record that is there. So the jury knew what without the – whether they got it in properly or not, unless you've challenged it. I'd just like to know what the jury had before it. The jury knew that Mr. Boscovich was in the Zvornik Brigade. The jury knew that the Zvornik Brigade had a role in the Srebrenica massacre. They heard from the government's expert about what that was, how many people were murdered, that it was a form of racial prejudice that drove it. They heard about the international community's response to that, and they heard about some of the facts and circumstances surrounding the massacre itself. So that evidence, yes, Your Honor, was in the record. All right. And could you address the refugee program, the next thing that was referred to by the prosecutor, why you think that is particularly harmful? Asking – telling the jury about our international reputation and asking the jury and telling the jury that there was something even worse about what Mr. Boscovich did because of the international reputation of the United States was not an issue in the case. It's not an element of the crime that he was charged with. The jury didn't have to find that in order to find guilt. And, in fact, what that was doing is asking the jury to convict him based on something else outside the record, some fear of damaging our reputation, some other power or prestige that the jury could have to protect our reputation in the international community. Okay. Now, just because I don't want to take up all your time, but I did ask you a question about curative instruction on Son of Sam, and I'd like to ask you to answer it combined with what you just identified. Again, no objection from defense counsel on this. So what did the trial court say about the arguments by way of curative instruction that would read on Son of Sam and the refugee, or and or in that case, the refugee program? The curative instructions given by the trial court were just the general instructions at the close of the case. The arguments by attorneys were not evidence. The jury was to decide the case on the evidence. The court did say that war crimes was not part of the case and that Mr. Boscovich was not charged with war crimes. But when this court has evaluated curative instructions in the past, two factors are the most important. One, that the curative instruction came contemporaneously with the improper arguments or the vouching, which it didn't happen here. And two, that the curative instructions specifically referred to the improper statement, and that didn't happen here either. So the instructions given in this case were not curative in terms of this Court's prior precedent on the issue. The real sticking point for me is even if we assume improper vouching, and as you can tell, I'm skeptical on that point, and even if we assume improper inflammatory argument with Son of Sam and improper argument with respect to the United States' reputation, we're dealing with plain error review because of no objection, which then you go back to in sort of approximate lay terms that this results in a substantial miscarriage of justice. The charge here is a relatively simple charge. The charge is you lied for immigration advantage. The evidence just seems to me open and shut that he did. So how do you get past the substantial injustice part of the plain error review? Your Honor, I respectfully disagree that the evidence is open and shut that he lied for an immigration advantage. I think what the evidence does prove is certain facts, such as he was in Zvornik Brigade, he admitted it. He admitted it in court, but he didn't admit it when asked questions about it as he was going through the immigration and naturalization process. That is one way to characterize the evidence. The other way is that he, A, either didn't understand the questions or, B, wasn't asked the exact questions that would have required that answer. But some of the questions are on a written form. I mean, so we know the questions. We know the questions, Your Honor, but I think this dovetails into the second point, which was the issue of the confrontation hearsay, which is we don't know what was happening in those interviews and with the translator, what Mr. Boscovich was actually saying, what the questions were being interpreted to him. And so there is that issue in the record itself. But to get back to your question, why isn't the evidence overwhelming, the evidence does suggest a possible motive, but it was up to the jury to decide whether Mr. Boscovich acted on that motive or whether he was actually answering questions the way he understood them. But I think we have evidence in the case. His defense is, I was told to do this because it might hurt my getting what I wanted. Part of the defense to the charge was we were told not to talk about this because nobody wanted to hear about it. The other part of the defense was part of these questions, that one of the questions was ambiguous and that he did not understand it to require disclosure of the Zvornik Brigade. And I think this goes back to the ultimate point, though, is it did boil down to credibility. Who were you going to believe? Were you going to believe his defense or were you going to believe the prosecutor's version of the story? And when the case is about credibility, that's when vouching and improper arguments become so critical and so prejudicial because they tip the scale for the jury in a way that it's not supposed to work that way. Okay. We've taken you down to 16 seconds, but we'll make sure you have a chance to respond. Thank you. Good morning. May it please the Court. John Alex Romano on behalf of the United States. Were you the prosecutor? Did you try this case? No, I didn't, Your Honor. I've only been involved in the appellate proceeding. So how come we're not seeing the prosecutor? Usually we do see the prosecutor. That is true, Your Honor. I would just note I'm with the criminal division of the Department of Justice. The case was jointly prosecuted by the U.S. Attorney's Office here and a division, a litigating section in the criminal division, and it's not uncommon for my section, the appellate section, to be involved in cases in which the criminal division was involved in a litigation. You know, we see immigration cases all the time and would-be immigrants, would-be asylum seekers, would-be assilies and so on. They lie all the time, and you never prosecute them criminally for doing it. What's going on in this case? Your Honor, I should say never. You almost never. This case is a striking exception. What's happening here? Your Honor, I can only speak to what's in the record, but, you know, these are, while these were false statement charges, those are serious charges that Congress has seen fit to criminalize. I understand. That's not my question. And I would just say with respect, for example, to the suppression hearing record, Agent Wyman was quite clear that when he came to interview Mr. Boskowitz That's not my question either. I'm trying to explain that he was not there to, while he may have suspected that Mr. Boskowitz was involved with war crimes, he was not there to extract a confession from him. So while there may have been He wanted information about war crimes. About, and I believe he testified that he wanted about with respect to other individuals who would have been involved and that he hoped that Boskowitz might have cooperated with respect to that. Counsel, with this charge, is Mr. Boskowitz on his way out of the country? Has he started deportation proceedings? My understanding, Your Honor, is that removal proceedings have not begun with respect to Mr. Boskowitz. Are they inevitable now because of his conviction? Sort of an easy way of getting him deported? Your Honor, based on my conversations with the trial prosecutor, I believe that removal proceedings are likely to occur. I do not believe that removal is a certainty once they begin. There are issues that Mr. Boskowitz could raise, I believe, to stop removal. But it is easier if you have a criminal conviction. I would believe so, Your Honor. Based on my limited understanding of immigration law, I would agree. But certainly we believe that the jury's guilty verdict here is entitled to some respect on the charges that were, in fact, returned by the grand jury and tried before the jury. So what was all the evidence about Srebrenica and the atrocities there? What was it relevant to? That was relevant to the materiality of the falsehood, Your Honor, with respect to lying about military service, and with respect to Mr. Boskowitz's state of mind that showed a motive to conceal, the evidence being that he believed that if he truthfully reported his military service that he would have problems either gaining refugee status or later on getting permanent residence. Because he'd be suspected of engaging in mass murder. Because it would raise questions along those lines, Your Honor, yes. And there was testimony to the effect that if someone reported military service, it wouldn't necessarily stop an individual from getting refugee status, but it would require further investigation to see if the individual had, in fact, been involved in persecution. Okay. Now, I'd like to address the Son of Sam issue. Yes, Your Honor. First, I'd like to understand, is it the rebuttal argument being given by a different prosecutor than made the opening, closing argument? I believe that is correct, Your Honor. So the counsel comes in and all he can think of on going after character witnesses is to draw on an analogy of Son of Sam, which he then makes sure that they understand what Son of Sam was all about, so that this jury can appreciate that Mr. Boskowitz's witnesses wouldn't know necessarily any more than the friends of Son of Sam knew that although he seems like a nice guy in court, this guy could be a mass murderer. But I'm not drawing any analogy. I have to say, counsel, in the context of this litigation and what you've just told us, I thought it was bad to begin with, but it sounds to me an awful lot like a deliberate plant of an analogy, and it's totally disingenuous, totally disingenuous to say, I don't mean to be suggesting that this mass murderer has anything to do. I just want to make a point about character witnesses not always understanding the character of the man that they're supporting. And since the prosecutor who did make that argument isn't here, I hope you'll convey that at least from this judge's perspective, that whatever may happen in this case, I found it reprehensible. Your Honor, I understand Your Honor's concerns, and I will relay those to the individual, the prosecutor. Can you tell me whether the prosecutor who made that closing argument invoking Son of Sam, was that the local U.S. Attorney's Office or was that the prosecutor from D.C.? That was the local AUSA, Your Honor, who made the rebuttal arguments. And I would note, with respect to the Son of Sam reference, not to at all belittle Your Honor's concerns with respect to that comment, that the jury, with respect to the prejudice coming out of the remark, the district court, toward the end of the jury charge, gave a very strong instruction with respect to how the jury could consider the war crimes evidence. That may be, but you have to invoke that because your colleague opened up the door to what I would consider, under some circumstances, certainly if it had been objected to and we weren't reviewing on plain air. I don't know, and I don't certainly speak for my colleagues, but I just have to tell you that I find that so disingenuous to say I don't mean to draw any analogies when the analogy is just plain as day on one's face. A cautionary instruction on the consideration of the war crimes is completely in order to the extent that it was proper to introduce the war crimes evidence for, as you said, materiality or motive to conceal. But Son of Sam had nothing to do with the Bosnian-Serbian conflict and had nothing to do with, I mean, it's just not a good analogy at all. It was bad from the beginning. I understand, Your Honor, that it was a strong reference. In hindsight, it was unnecessary. I do not believe it was done with malintent, but I don't say that to minimize Your Honor's concerns with respect to the remark. I would just note in that instruction, the district court was, it ended that paragraph-long instruction by saying there is no evidence that Mr. Boscovich committed war crimes in this case. The jurors are presumed to follow their instructions, so we believe that that instruction would cure the prejudice coming out of that remark. The jurors are presumed to honor the code and also the law. I understand, Your Honor. But this case just screams to me that the reason the prosecution was brought was that the government had a belief that he was involved in war crimes. I mean, there is no other rational explanation that occurs to me, given the amount of lying that goes on in immigration cases and given the infrequency, almost absence, of criminal prosecutions for false statements in immigration cases. I understand, Your Honor. This case was presented to the grand jury and it returned the indictment on two charges, and I don't mean to not be sensitive to Your Honor's comment, but the jury found the evidence of his guilt and two violations of the statute. Well, the prosecutor gets to do what the prosecutor wants to do, so long as it's within the bounds of the law. But I think you're hearing in various ways from all three of us that this is the government who wants to get this guy, and they're pushing the boundaries in ways that makes us all quite uncomfortable. I understand, Your Honor. From the government's view, we were simply holding him accountable for a crime that occurred and the jury found occurred. But I understand Your Honor's comments. Would Your Honor's like me to address the third and fourth prongs of the plain error test with respect to the comments? With respect to the – even if the Court were to find that the Son of Sam reference was inappropriate and that it was an obvious error under the second prong of the plain error test, we believe that reversal would not be warranted under the remaining prongs, because the evidence supporting his conviction was, in fact, quite strong. This was not – I disagree with Ms. Hellman's suggestion that this was a case boiled down to a credibility contest between the government's witness, Agent Wyman, and Mr. Boscovich. In fact, you had evidence corroborating Agent Wyman's testimony about the interviews. You had evidence – the testimony, excuse me, of Boscovich's former neighbor, Greg Bishop, who testified that he had a conversation with Mr. Boscovich, and Mr. Boscovich spoke complete English. He was heavily accented, but he spoke complete English. And that supports – What's complete English? I think complete English was the test – were the words that Mr. Bishop used. I think it's just to mean he spoke English well, albeit with a heavy accent. And that supports the fact that, in fact, Mr. Boscovich knew what was going on during these interviews, and he knew the content of the statement that he signed. And I think the fact that you have not only the omission of military service on the various immigration applications, but you also have the parallel lie concerning his residence in Bosnia goes a long way to showing that he was making these lies knowingly, because he knew that if he truthfully reported residence in Bosnia during the Civil War, that that would raise a red flag, that, in fact, giving conscription practices during the Civil War, that that would have raised a red flag that he had, in fact, served in the military. So we think that there is strong evidence supporting the conviction, and we would urge the Court not to reverse based on the prosecutor's rebuttal statement. Why is the son-of-Sam analogy an illusion, allusion, not illusion? Why is that not so inherently prejudicial that it warrants a new trial? I'm sorry. I missed the last part. Why is it not so prejudicial that it warrants a new trial? Your Honor, because I think even just applying the factors of the plain error test, that even if the Court were to find that it was clearly an appropriate remark, that it was clear error under the second prong, you would still need to go to the prejudice analysis, an analysis of whether a miscarriage of justice would result. And I think the strength of the evidence, Your Honor, I think would tilt strongly in favor of not ordering a new trial. And while the district court did not give a specific curative instruction concerning that son-of-Sam reference, it did instruct the jury that lawyers' arguments are not evidence and that the jury's roles define the facts in this case. So I always have trouble on inflammatory statements when they've said, well, there's no prejudice because they would have convicted him anyway. Which makes me wonder why an experienced prosecutor would take the opportunity on rebuttal when the case is so strong to inject an inflammatory statement. It doesn't sound as if the prosecutor felt comfortable and as confident as you that the jury, in hearing all the evidence that was before it, there was no chance that they would find against the government. I understand, Your Honor. But the quantum of evidence is, under this Court's case law, a relevant factor to consider when applying the test. And I would finally note that while the jury returned guilty verdicts on both counts, it did make a split finding on count one. It did not find that Mr. Boscovich had lied in connection with his refugee application. It only found that he had lied on his green card application. So it showed that the jury itself was deciding which evidence to accept and not accept and which arguments to accept and not accept. So we think that that is an indication that the jury fairly considered the evidence and that would also militate against an order for a new trial. Turning very briefly to the confrontation clause question, we believe that there was no confrontation clause violation that resulted from the admission of Mr. Boscovich's translated statements during his refugee interview because the interviewer who presided was a language conduit. And as such, the translation of Mr. Boscovich's statements did not create an intervening level of hearsay. The statements are attributable directly to him, and therefore no confrontation clause issue arises. Unless this Court has any other questions, we would respectfully ask that it affirm the convictions. Thank you. Ms. Hellman, would you like two minutes? Thank you, Your Honor. I have just three points in reply. First, Judge Bybee, to answer your question, yes, a conviction under 1546 is an automatic deportation, and it's my understanding that there is not anything Mr. Boscovich can do in an immigration proceeding to change his fate with this charge. Second, with regards to the split finding, the government's position is that this shows that the jury weighed and balanced the evidence. An alternative view is that it shows that the evidence was not overwhelming, but that the jury was pushed over the edge to convict based on the improper argument that happened in rebuttal. It's not the same as an acquittal. It's a split verdict, but it's still a finding of guilt. And third, finally, although we strongly debate the strength of the evidence, I think when you consider whether this was a miscarriage of justice, it was. The government can bring charges against people. That's what they're there to do. But they're not there to play outside the rules, and they're not there to get convictions under improper means. And that's exactly what happened in this case, and that's the primary reason that we'd ask this Court to remand for a new trial. Thank you. Okay. Thank you very much. The case of United States v. Boscovich now submitted for decision.
judges: Fletcher, Fisher, Bybee